1  HANSON BRIDGETT LLP
   RICHARD J. STRATTON - 54648
2  rstratton@hansonbridgett.com
   KURT A. FRANKLIN - 172715
3  kfranklin@hansonbridgett.com
   MEGAN OLIVER THOMPSON - 256654
4  moliverthompson@hansonbridgett.com
   425 Market Street, 26th Floor
5  San Francisco, CA  94105
   Telephone:   (415) 777-3200
6  Facsimile:   (415) 541-9366

7  Attorneys for Plaintiffs

8              UNITED STATES DISTRICT COURT

9         FOR THE NORTHERN DISTRICT OF CALIFORNIA

10              SAN FRANCISCO DIVISION

11

12 | Roy D. Newport; Larry D. Ralston; | No.  CV 10-0455 WHA
   | Lynn A. Hartje; Antelope Valley |
13 | Restaurants, Inc.; Beach City, Inc.; | **FIRST AMENDED COMPLAINT FOR**
   | Chris G. Bredesen; Abdul Kahn; | **DECLARATORY RELIEF**
14 | Brening Enterprises, Inc.; Brening |
   | Enterprises, LP; Brening Enterprises |
15 | No. 3, Inc.; 952 Enterprises, LLC; |
   | Masroor A. Batla; Tallat Batla; Batla |
16 | Restaurant Group, Inc.; Bayshore |
   | Foods, Inc.; Eureka Fortune, Inc.; C&R |
17 | Foods, Inc.; C&S Foods, Inc.; |
   | Shenandoah Valley Enterprises, Inc.; |
18 | Charles D. Cobb; Robert T. Chiu; Card |
   | Investment, Incorporated; Centennial |
19 | Restaurants LLC; Deep Valley |
   | Enterprises, Inc.; Dhillon ABS |
20 | Investment, Inc.; Robert Eng; RLE |
   | Investment Corporation; Chu |
21 | Investment, Inc.; Daniel Chu; Patsy |
   | Chu; Evergreen Restaurant Group |
22 | California, Inc.; Gate 74, Inc.; Herbert |
   | Hakimianpour; Robert Hakimianpour; |
23 | Violet Hakimianpour; Elham |
   | Hakimianpour; Hart Foods, Inc.; |
24 | Dominic Ho; J and A Food Service, |
   | Inc.; Jose Villaflor; Carolyn P. Arnold; |
25 | Albert Gonzalez, III; Mangen Group, |
   | Inc.; Vince Eupierre; Midas Enterprises |
26 | Corporation; Metro Management |

27

28
                           - 1 -

1  Systems, Inc. f/k/a Progressive
   Management Systems; Puja
2  Restaurant Group, Inc.; Ravind Ent.,
   Inc.; Reddy Holly, L.P.; Sacca Corp.;
3  Gussie M. Hampton; David Lynwood
   Hairston; S J Quickbite, Inc.; Summit
4  Equity Group, Inc.; Tri-City Foods, Inc.;
   Patel Brothers, Inc.; Richard G.
5  Whitehurst; Lorraine D. Whitehurst;
   WDR Restaurants, Inc. f/k/a HKR
6  Restaurants, Inc.; Shakeb Zuberi; and
   Syed Musavi,
7
                    Plaintiffs,
8
        v.
9
   Burger King Corporation,
10
                    Defendant.
11

12      Plaintiffs, through their attorneys, for their First Amended Complaint[1] against

13  Defendant Burger King Corporation ("BKC"), allege as follows:

14                          **INTRODUCTION**

15      1.      This case arises directly from Burger King Corporation's very recent

16  settlement of the class action disability rights lawsuit, *Castaneda, et al. v. Burger King*

17  *Corporation*, Case No. 08-4262 ("Castaneda Suit").

18      2.      Burger King Corporation ("BKC"), the only defendant to the suit, was

19  alleged to have violated state and federal disability laws by imposing common

20  architectural barriers to access, including mandatory equipment and furniture within the

21  handful of prototype restaurants, in addition to applying uniform discriminatory policies

22  and practices at its leased franchise restaurants in California.  The allegations hinged on

23  BKC's central control and company-wide policies.

24      3.      After the Court ruled on class certification, BKC negotiated and agreed to a

25  settlement consisting of a $5 million payment to the class and $2.5 million in attorney's

26

27  _____
    [1]     This First Amended Complaint is being filed pursuant to this Court's "Case
28  Management Order and Reference to ADR Unit for Mediation" entered on January 21,
    2011.
                                  - 2 -

1   fees, plus a requirement that BKC take affirmative steps to change many of its policies

2   with respect to providing increased access to the disabled in its California restaurants.

3   According to the parties' joint motion for preliminary settlement approval in the

4   Castaneda Suit, the settlement was considered to be the highest monetary settlement

5   ever in a disability access case involving public accommodation, both on a per person

6   and per facility basis. Presumably, BKC placed such high value on this case to resolve

7   what must be described as impact litigation to change BKC's policies and practices.

8         4.     Upon securing settlement approval, BKC turned to Plaintiff franchisees for

9   reimbursement of all of its costs, even though the suit was plainly impact litigation

10   concentrated on BKC's actions and omissions. In particular, BKC demanded that those

11   franchisees whose restaurants were never visited by class plaintiffs as part of the

12   Castaneda Suit reimburse BKC for approximately $2.5 million in attorney's fees and

13   costs incurred by it in defending the Castaneda Suit. Similarly, BKC, or its insurer, is

14   seeking from those franchisees whose restaurants were visited in the Castaneda Suit

15   (the "Focus 10") reimbursement of the full $7.5 million it paid to settle the Castaneda

16   Suit. The franchisees for most of the Focus 10 are Plaintiffs herein.[2] Further, if the

17   Plaintiff franchisees do not pay BKC's unfounded demand, BKC threatens to "terminate"

18   their franchise agreements, engage in self-help by withholding money owed to the

19   franchisees, and/or otherwise retaliate against franchisees by preventing them from

20   obtaining new restaurant opportunities or limiting to whom they may sell their existing

21   franchises (whether or not in California).

22         5.     Plaintiff franchisees were never made parties to the Castaneda Suit, nor

23   was their conduct the focus of the class allegations. The Castaneda plaintiffs have

24   consistently maintained that their lawsuit was impact litigation directed at BKC, the

25   franchisor, because of its significant control over the franchisees through their franchise

26   agreements. Moreover, neither the plain terms of the parties' franchise agreements nor

27

28   
_____

[2]   Focus 10 franchisee, Strategic Restaurants, is represented by its own counsel, Martin Orlick of Jeffer Mangels Butler & Mitchell LLP.

FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF;
CASE NO. CV 10-0455 WHA

2844710.1

1    the public policy of the State of California support BKC's demand for reimbursement.

2        6.    A judicial determination is now necessary to preclude BKC from retaliating

3    against Plaintiff franchisees and to preclude BKC from reaping a benefit to which it is not

4    entitled based on its own conduct, omissions, and failures.  Plaintiffs seek a declaration

5    that BKC has no right to indemnification for costs incurred in the Castaneda Suit

6    pursuant to the parties' franchise agreements.

7        7.    Each of the Plaintiff franchisees joins together in this common declaratory

8    relief action against Burger King Corporation.  Each BKL restaurant was originally built

9    by BKC.  Each Plaintiff franchisee fears BKC retaliation against it, but are identified

10   below as individual plaintiffs in this action for declaratory relief to interpret BKC's uniform

11   franchise agreement language as it applies to the Castaneda Suit and to remedy BKC's

12   unfair application of same.

13                                  **PARTIES**

14       8.    Plaintiff Antelope Valley Restaurants, Inc. is a corporation formed under

15   the laws of California.  Plaintiffs Roy D. Newport, Larry D. Ralston, and Lynn A. Hartje

16   are citizens of the State of California.  Antelope Valley Restaurants, by assignment from

17   Messrs. Newport and Ralston and Ms. Hartje, is the franchisee for Store Nos. 2473 and

18   2901.

19       9.    Plaintiff Beach City, Inc. is a corporation formed under the laws of

20   California with its principal place of business located in California.  Beach City, Inc. is the

21   franchisee for Store No. 912.

22       10.    Plaintiffs Chris G. Bredesen and Abdul Kahn are citizens of the State of

23   California and franchisees for Store No. 1897 [Bred/Khan Associates].

24       11.    Plaintiff Brening Enterprises, Inc. is a corporation formed under the laws of

25   California with its principal place of business located in California.  Brening Enterprises,

26   Inc. is the franchisee for Store No. 1682.

27       12.    Plaintiff Brening Enterprises, L.P. is a limited partnership formed under the

28   laws of California with its principal place of business located in California.  All partners of

- 4 -

FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF;
CASE NO. CV 10-0455 WHA

2844710.1

1    Brening Enterprises, LP. are citizens of the State of California.  Brening Enterprises, LP.

2    is the franchisee for Store No. 2474.

3           13.    Plaintiff Brening Enterprises No. 3, Inc. is a corporation formed under the

4    laws of California with its principal place of business located in California.  Brening

5    Enterprises No. 3, Inc. is the franchisee for Store Nos. 2891 and 2976.

6           14.    Plaintiff 952 Enterprises, LLC is a limited liability company formed under

7    the laws of California with its principal place of business located in California.  952

8    Enterprises, LLC is the franchisee for Store No. 814.

9           15.    Plaintiffs Masroor A. Batla and Tallat Batla are citizens of the State of

10   California.  Plaintiff Batla Restaurant Group, Inc. is a corporation formed under the laws

11   of California.  Batla Restaurant Group, Inc., by assignment from Masroor A. Batla and

12   Tallat Batla, is the franchisee for Store No. 4552.

13          16.    Plaintiffs Bayshore Foods, Inc. and Eureka Fortune, Inc. are corporations

14   formed under the laws of California with their principal place of business located in

15   California.  At different relevant times, Bayshore Foods, Inc. and Eureka Fortune, Inc.

16   were franchisees for Store No. 3530.

17          17.    Plaintiff C & R Foods, Inc. is a corporation formed under the laws of

18   California with its principal place of business located in California.  C & R Foods, Inc. is

19   the franchisee for Store No. 3441.

20          18.    Plaintiff C&S Foods, Inc. is a corporation formed under the laws of

21   California with its principal place of business located in California.  C&S Foods, Inc. is

22   the franchisee for Store No. 2268.

23          19.    Plaintiff Shenandoah Valley Enterprises, Inc. is a corporation formed under

24   the laws of California with its principal place of business located in California.

25   Shenandoah Valley Enterprises, Inc. is the franchisee for Store No. 3459.

26          20.    Plaintiff Card Investment, Incorporated is a corporation formed under the

27   laws of California with its principal place of business located in California.  Plaintiffs

28   Charles D. Cobb and Robert T. Chiu are citizens of the State of California.  Card

- 5 -

1   Investment, Incorporated is the franchisee, by assignment from Charles D. Cobb and

2   Robert T. Chiu, for Store Nos. 6816 and 6931.

3          21.    Plaintiff Centennial Restaurants LLC is a limited liability company formed

4   under the laws of California with its principal place of business located in California.

5   Centennial Restaurants LLC is the franchisee for Store No. 3157.

6          22.    Plaintiff Deep Valley Enterprises, Inc. is a corporation formed under the

7   laws of California with its principal place of business located in California.  Deep Valley

8   Enterprises, Inc. is the franchisee for Store No. 2563.

9          23.    Plaintiff Dhillon ABS Investment, Inc. is a corporation formed under the

10  laws of California with its principal place of business located in California.  Dhillon ABS

11  Investment, Inc. is the franchisee for Store No. 3217.

12         24.    Plaintiff Robert Eng is a citizen of the State of California.  RLE Investment

13  Corporation is a corporation formed under the laws of California with its principal place of

14  business located in California.  Plaintiff RLE Investment Corporation, by assignment from

15  Robert Eng and others, was the franchisee for Store No. 726.

16         25.    Plaintiff Chu Investment, Inc. is a corporation formed under the laws of

17  California with its principal place of business located in California.  Chu Investment, Inc.

18  is the franchisee for Store No. 1036.

19         26.    Plaintiffs Daniel Chu and Patsy Chu are citizens of the State of California

20  and franchisees for Store No. 1038 [C&L 28, Inc.].

21         27.    Plaintiff Evergreen Restaurant Group California, Inc. is a corporation

22  formed under the laws of California with its principal place of business located in

23  California.  Evergreen Restaurant Group California, Inc. is the franchisee for Store Nos.

24  780, 3355 and 835.

25         28.    Plaintiff Gate 74, Inc. is a corporation formed under the laws of California

26  with its principal place of business located in California.  Gate 74, Inc. is the franchisee

27  for Store No. 15079.

28         29.    Plaintiffs Herbert Hakimianpour and Robert Hakimianpour are citizens of

- 6 -

1    the State of California and franchisees for Store No. 2149 [Hakimianpour Restaurant

2    Group] and Store No. 919 [Hakimianpour Santa Monica Group, LLC]. Plaintiffs Violet

3    Hakimianpour and Elham Hakimianpour are citizens of the State of California and,

4    together with Herbert and Robert Hakimianpour, are franchisees for Store No. 918

5    [Hakimianpour Restaurant Group].

6        30.    Plaintiff Hart Foods, Inc. is a corporation formed under the laws of

7    California with its principal place of business located in California. Hart Foods, Inc. is the

8    franchisee for Store No. 4075, which was one of the Focus 10 restaurants.

9        31.    Plaintiff Dominic Ho is a citizen of the State of California and one of the

10   franchisees for Store No. 4405 [Ho Yee Restaurant].

11       32.    Plaintiff J and A Food Service, Inc. is a corporation formed under the laws

12   of California with its principal place of business located in California. J and A Food

13   Service, Inc. is the franchisee for Store No. 3208.

14       33.    Plaintiff Jose Villaflor is a citizen of the State of California and franchisee

15   for Store No. 3147.

16       34.    Plaintiffs Carolyn P. Arnold and Albert Gonzalez, III are citizens of the

17   State of California and franchisees for Store No. 2521 [Kern Desert Foods, Inc.].

18       35.    Plaintiff Mangen Group, Inc. is a corporation formed under the laws of

19   California with its principal place of business located in California. Mangen Group, Inc. is

20   the franchisee for Store Nos. 733, 2399 and 10567.

21       36.    Plaintiff Vince Eupierre is a citizen of the State of California and was a

22   franchisee for Store No. 3316 [Mancha Development Company].

23       37.    Plaintiff Midas Enterprises Corporation is a corporation formed under the

24   laws of California with its principal place of business located in California. Midas

25   Enterprises Corporation was a franchisee for Store No. 609.

26       38.    Plaintiff Metro Management Systems, Inc. f/k/a Progressive Management

27   Systems is a corporation formed under the laws of California with its principal place of

28   business located in California. Metro Management Systems, Inc. f/k/a Progressive

- 7 -

1    Management Systems is the franchisee for Store Nos. 1417 and 1346.

2        39.     Plaintiff Puja Restaurant Group, Inc. is a corporation formed under the laws

3    of California with its principal place of business located in California. Puja Restaurant

4    Group, Inc. is the franchisee for Store Nos. 896, 817, 3587 and 4088.

5        40.     Plaintiff Ravind Ent., Inc. is a corporation formed under the laws of

6    California with its principal place of business located in California. Ravind Ent., Inc. is

7    the franchisee for Store No. 4039, which was one of the Focus 10 restaurants.

8        41.     Plaintiff Reddy Holly, L.P. is a limited partnership formed under the laws of

9    California with its principal place of business located in California. All partners of Reddy

10    Holly, L.P. are either California citizens or non-Florida citizens. Reddy Holly, L.P. is the

11    franchisee for Store Nos. 4641 and 13580.

12        42.     Plaintiff Sacca Corp. is a corporation formed under the laws of California

13    with its principal place of business located in California. Sacca Corp. is the franchisee

14    for Store Nos. 1943 and 2505.

15        43.     Plaintiffs Gussie M. Hampton and David Lynwood Hairston are citizens of

16    the State of California and franchisees for Store No. 977 [Sarah Wade Corporation],

17    which was one of the Focus 10 restaurants.

18        44.     Plaintiff S J Quickbite, Inc. is a corporation formed under the laws of

19    California with its principal place of business located in California. S.J. Quickbite, Inc. is

20    the franchisee for Store Nos. 3246 and 6028.

21        45.     Plaintiff Summit Equity Group, Inc. is a corporation formed under the laws

22    of California with its principal place of business located in California. Summit Equity

23    Group, Inc. is the franchisee for Store Nos. 4514, 2485 and 5869.

24        46.     Plaintiff Tri-City Foods, Inc. is a corporation formed under the laws of

25    California with its principal place of business located in California. Tri-City Foods, Inc. is

26    the franchisee for Store No. 6947.

27        47.     Plaintiff Patel Brothers, Inc. is a corporation formed under the laws of

28    California with its principal place of business located in California. Patel Brothers, Inc. is

- 8 -

1   the franchisee for Store No. 2279.

2       48.    Plaintiff Richard G. Whitehurst and Lorraine D. Whitehurst are citizens of

3   the State of California and franchisees for Store No. 3034 [Union Foods, Inc.].

4       49.    Plaintiff WDR Restaurants, Inc. f/k/a HKR Restaurants, Inc. is a corporation

5   formed under the laws of California with its principal place of business located in

6   California.  WDR Restaurants, Inc. f/k/a HKR Restaurants, Inc. is the franchisee for

7   Store No. 1937.

8       50.    Plaintiffs Shakeb Zuberi and Syed Musavi are citizens of the State of

9   California and franchisees for Store No. 2893 [Allience, Inc.].

10       51.    Defendant Burger King Corporation ("BKC") is a corporation incorporated

11   under the laws of Florida with its principal place of business located at 5505 Blue

12   Lagoon Drive, Miami, Florida 33126.  BKC is in the business of franchising and leasing

13   restaurants to franchisees in California, other parts of the United States, and

14   internationally.

15   ## JURISDICTION AND VENUE

16       52.    Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1332 because all

17   Plaintiffs are diverse from Defendant BKC and the amount in controversy exceeds

18   $75,000.

19       53.    The Court may grant declaratory and other relief pursuant to 28 U.S.C. §§

20   2201 and 2202.

21       54.    Venue is proper in the United States District Court for the Northern District

22   of California pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events

23   giving rise to Plaintiffs' claims occurred in this judicial district.  The Castaneda Suit

24   alleged that BKC violated state and federal law by discriminating against persons with

25   disabilities.  In addition, venue is proper in this District pursuant to California Business

26   and Professions Code § 20040.5 because Plaintiffs' claims relate to franchise

27   agreements involving franchises operating within California.

28   ## INTRADISTRICT ASSIGNMENT

- 9 -

1    55.    This action should be assigned to the San Francisco Division of the United

2    States District Court for the Northern District of California pursuant to Civil Local Rule 3-

3    2(c) because it is related to the case of *Castaneda, et al. v. Burger King Corporation*

4    pending in this District before the Honorable William H. Alsup at Case No. 08-4262 and

5    many of the events giving rise to Plaintiffs' claims occurred in this judicial district.

6                                **GENERAL ALLEGATIONS**

7    56.    There are approximately 600 Burger King restaurants in the State of

8    California, all of which are franchises.  Of these 600 restaurants, approximately 96 were

9    leased or subleased from BKC to a franchisee at all times relevant to the Castaneda

10   Suit, and are commonly known as "BKLs."  On information and belief, many of these 96

11   BKLs were once company-owned stores that BKC originally constructed and furnished.

12   57.    Each of the Plaintiffs herein is a BKL, a Burger King franchisee that leases

13   or subleases a restaurant from BKC (referred to herein as "Plaintiffs" or "Franchisees").

14   Accordingly, each Plaintiff is party to a franchise agreement and a lease or sublease with

15   BKC.

16   58.    BKC exerts extensive control over its franchisees and the BKL restaurants.

17   According to BKC's franchise agreements, BKC controls the standards and uniformity of

18   operations for the BKL restaurants, from the design of each restaurant, to the equipment

19   and furniture, to the operational standards, to the menu, to the hours of operation,

20   among others.  The franchise agreements set forth the "standards and uniformity of

21   operation" for BKL restaurants.  (An exemplar franchise agreement is attached hereto as

22   Exhibit A.)  For example, BKC requires franchisee adherence to its "comprehensive

23   restaurant format and operating system, including a standardized design, décor,

24   equipment system, color scheme and style of building and signage, uniform standards,

25   specifications and procedures of operation, quality and uniformity of product and

26   services offered and the provisions of the Manual of Operating Data."  This Manual of

27   Operating Data "contains the official mandatory restaurant operating standards,

28   specifications and procedures prescribed from time to time by BKC for the operation of a

- 10 -

FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF;
CASE NO. CV 10-0455 WHA

2844710.1

1  Burger King Restaurant." BKL restaurants must be "constructed and improved" as

2  "authorized and approved" by BKC. Burger King marks may only be "erected and

3  displayed" as "approved and authorized" by BKC. BKL restaurants may only use

4  equipment approved by BKC "which meets the criteria and performance standards of the

5  Burger King Restaurant System." As another example of BKC's control, BKC tells BKLs

6  what hours they must be open, what must be on the menu, and the maximum they can

7  charge for certain menu items.

8      59.    On January 16, 2008, counsel for a putative class of persons who use

9  scooters or wheelchairs for mobility sent a demand letter to BKC concerning accessibility

10  of all Burger King restaurants in California. Based on subsequent negotiation, the

11  putative class narrowed its demand to cover all BKLs in California.

12      60.    On September 10, 2008, BKC[3] was sued by this putative class pursuant to

13  the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, Section 51 of the

14  California Civil Code (Unruh Act), and Section 54 of the California Civil Code (California

15  Disabled Persons Act ("CDPA")). The suit, entitled *Castaneda, et al. v. Burger King*

16  *Corporation*, was filed in this District under Case No. 08-4262 ("Castaneda Suit").

17      61.    On March 13, 2009, a First Amended Complaint ("FAC") was filed to add

18  two other lead plaintiffs. The FAC is the operative pleading for the Castaneda class.[4]

19      62.    The putative class in the Castaneda Suit alleged that BKC was liable for

20  alleged common architectural barriers to access at some or all of the approximately 96

21  BKLs, based on BKC's central control and company-wide policies affecting those

22  architectural barriers. As set forth in the FAC, "[t]his proposed class action alleges that

23  Burger King has violated federal and state laws by denying customers who use

24  wheelchairs and scooters access to restaurant services by imposing architectural or

25  design barriers and discriminatory policies or practices." In addition, the putative class

26

27  [3]  The complaint also named Burger King Holdings, Inc. as a defendant, but this entity was voluntarily dismissed by the putative class on November 21, 2008.

28  [4]  The Castaneda class' stipulated request for leave to file a Second Amended Complaint on October 19, 2009 was denied by the Court on October 21, 2009.

- 11 -

1    alleged that BKC's discrimination included "designing, constructing, implementing and

2    maintaining policies, practices, procedures and barriers that discriminate against

3    members of the putative class . . ." The putative class' allegations were further

4    supported by BKC's prior settlement in *Day v. Republic Foods, Inc.*, No. 95-1317CV

5    (D.D.C. 1997), according to which BKC was required to survey and remedy similar ADA

6    violations in its corporate-owned restaurants throughout the country, thereby making

7    BKC aware of ADA requirements and its failure to comply with same.  The putative

8    class sought an injunction ordering BKC to adopt policies and procedures ensuring

9    access for customers who used wheelchairs and scooters and to bring BKC and their

10   California BKL restaurants into compliance with the ADA, the Unruh Act, and the CDPA.

11         63.    Several months into the litigation, BKC purportedly "tendered" its defense

12   in the Castaneda Suit to some of the BKLs according to the parties' "agreements." In a

13   letter purportedly mailed on January 22, 2009, BKC advised some of the BKLs that they

14   were required to defend and indemnify BKC for costs, expenses, and damages,

15   including attorney's fees.  BKC also stated it was reserving the right to seek

16   reimbursement from the BKLs for such costs incurred in connection with the Castaneda

17   Suit.  Despite these statements, BKC unilaterally assumed and controlled the defense of

18   the Castaneda Suit.  An exemplar of the January 22, 2009 letter is attached hereto as

19   Exhibit B.

20         64.    Some of the Franchisees expressly rejected this "tender" and denied that

21   they should either defend or indemnify BKC for its negligence and/or other wrongdoing,

22   and responded in writing to the January 22, 2009 letter, denying responsibility for

23   attorney's fees and the cost of surveying the BKL stores.  A copy of a response dated

24   February 9, 2009 is attached hereto as Exhibit C.  None of the Plaintiff franchisees

25   herein have ever agreed to the January 22, 2009 demand for indemnification.

26         65.    On July 29, 2009, the Castaneda plaintiffs sought to certify a class of

27   persons with disabilities who patronized all 96 BKLs in California.

28         66.    Two days later, on July 31, 2009, BKC, not the Castaneda plaintiffs, sought

- 12 -

1 to add the 96 BKLs to the litigation, claiming they were necessary parties under Federal

2 Rule of Civil Procedure 19. BKC wrongly asserted that the BKLs were solely responsible

3 for operating and maintaining the restaurants, including compliance with the ADA and

4 state access laws, and that the BKLs must indemnify BKC with respect to **any** litigation-

5 related costs or expenses relating to the condition of the restaurants. Thus, BKC

6 asserted, their presence in the lawsuit was necessary.

7       67.    On September 25, 2009, the Court granted class certification with respect

8 to only ten of the BKL restaurants ("Focus 10") and denied class certification as to the

9 others. The Focus 10 restaurants consisted of restaurants actually visited by the lead

10 plaintiffs of the Castaneda class. Similarly, the Court granted BKC's Rule 19 motion only

11 as to the Focus 10 and on the conditions that no new defendant sought to reopen

12 discovery and that all new defendants must be added and appear before dissemination

13 of class notice. No new defendants were ever added to the suit. The franchisees for

14 most of the Focus 10 restaurants are Plaintiffs herein.

15       68.    The Castaneda class and BKC began settlement discussions soon after

16 class certification, participating in an unmediated negotiation on January 7, 2010, a

17 mediation on January 27, 2010, and further settlement negotiations thereafter. These

18 negotiations ultimately produced a settlement jointly claimed by BKC and the Castaneda

19 plaintiffs to be the highest monetary settlement ever in a disability access case involving

20 public accommodation, as stated in the parties' Joint Motion for Preliminary Approval of

21 Stipulation and Settlement Agreement.

22       69.    On March 5, 2010, BKC and the Castaneda class jointly submitted the

23 Settlement Agreement to the Court. BKC and the Castaneda class then jointly moved

24 for preliminary approval of the settlement on March 9, 2010. Preliminary approval was

25 granted on March 19, 2010.

26       70.    On May 17, 2010, BKC and the Castaneda class then moved for final

27 approval of the settlement. After a hearing on July 8, 2010, final approval was granted

28 on July 12, 2010.

2844710.1

1    71.    According to the final court-approved settlement, BKC agreed to pay

2    $5,000,000 cash for distribution to the class members.  BKC also agreed not to oppose

3    a motion by class counsel for $2,500,000 in attorney's fees, which the Court granted.

4    The Court also awarded sums to the named plaintiffs for out-of-pocket expenses.

5    72.    In addition to the monetary terms of the settlement, BKC agreed to take

6    other affirmative steps to address the complaints of the Castaneda class.  In particular,

7    BKC agreed to ensure that a handful of specific alleged barriers were removed from the

8    restaurants and to establish comprehensive procedures that promise to prevent the

9    occurrence of future barriers at the Focus 10 restaurants.  In order to ensure that access

10   is maintained, the settlement requires BKC to: implement a comprehensive daily-access

11   checklist at restaurants, along with modification of restaurant opening procedures; to

12   conduct mid-level access surveys of the BKLs at least every three years; and to conduct

13   successor remodel access surveys of the BKLs every 20 years.  Upon information and

14   belief, BKC is now applying these same terms to each of the Plaintiffs herein.

15   73.    Plaintiffs herein did not participate in the mediation and were not parties to

16   the settlement of the Castaneda Suit.  They did not consent to the amount or terms, all of

17   which were negotiated by BKC and the class plaintiffs.

18   74.    Shortly after the settlement was finalized, on July 30, 2010, BKC sent a

19   letter to each of the Plaintiffs herein that have non-Focus 10 restaurants, advising them

20   that class counsel in the Castaneda Suit had made demand with respect to the BKLs not

21   addressed in the Castaneda settlement, and requesting Plaintiffs' participation in an

22   upcoming mediation to discuss the threatened claims.  BKC also demanded that

23   Plaintiffs "acknowledge their responsibility" for their restaurants.  An exemplar of the July

24   30, 2010 letter is attached hereto as Exhibit D.

25   75.    In addition, BKC sent another letter to most, if not all, of the Plaintiffs herein

26   that have non-Focus 10 restaurants demanding reimbursement of attorney's fees and

27   costs it incurred in connection with the Castaneda Suit pursuant to Plaintiffs'

28   "agreements" with BKC.  No specific "agreements" were identified in this letter.  An

- 14 -

1    exemplar of this demand letter is attached hereto as Exhibit E.

2         76.    The demand letters calculated the amount of reimbursement being

3    demanded of each Plaintiff, ranging generally from approximately $34,000 to $36,000 for

4    each restaurant.  Included in the demands are allocated legal fees incurred through

5    September 20, 2009 (the date class certification was denied as to most BKLs) in the

6    Castaneda Suit; allocated legal fees incurred defending the appeal of the Court's class

7    certification order; survey/architectural fees incurred in determining a BKL's compliance

8    with disabilities laws; and remediation/survey costs incurred in verifying compliance with

9    disabilities laws pursuant to any "Scope of Work" sent to a BKL.  In addition to these

10   demand letters, attorneys for BKC and its insurer have stated they will seek full

11   reimbursement from the BKLs if BKC is sued again by the attorneys for the Castaneda

12   plaintiffs, including any award of attorney's fees, damages, and defense fees and costs.

13   Further, they invited Plaintiffs herein to attend and participate in a mediation with the

14   attorneys for the Castaneda plaintiffs.  In light of the Castaneda Suit that BKC settled, it

15   is estimated that BKC's total demand will exceed $75,000 for each Plaintiff herein.

16        77.    According to the above-referenced demand letters, BKC requested a

17   response by August 16, 2010 before pursuing its legal remedies to recover the

18   demanded attorney's fees and costs.

19        78.    With respect to the Focus 10 BKLs, the above-referenced demand letters

20   stated that "Franchisees who own the Focus Ten BKLs will be sent a separate letter

21   which will set forth the reimbursement process for their portion of Defense Costs, as well

22   as any settlement expenses."  Attorneys for BKC and its insurer have unequivocally

23   stated they expect reimbursement of the full $7.5 million settlement in the Castaneda

24   Suit from franchisees for the Focus 10 restaurants.  In addition, BKC seeks its full

25   defense costs from all Franchisees.

26        79.    Despite BKC's repeated demands and mischaracterization of the parties'

27   obligations, Plaintiffs have never acceded to BKC's interpretation of the parties'

28   agreement.  Indeed, Plaintiffs deny and dispute that BKC is entitled to indemnification for

- 15 -

1    any costs incurred in connection with the Castaneda Suit pursuant to the Franchise

2    Agreements.

3         80.    The Franchise Agreements contain substantially similar indemnification

4    provisions.  *See* Exhibit A as an exemplar of the indemnity provisions.

5         81.    Paragraph 13.C. of the Franchise Agreements requires a franchisee to

6    indemnify BKC for losses, *unless such losses result from the negligence of BKC.*

7    Paragraph 13.C. provides, in pertinent part, as follows:

8

9         FRANCHISEE is responsible for all losses or damages and contractual liabilities
     to third persons arising out of or in connection with possession, ownership or

10        operation of the Franchised Restaurant, and for all claims or demands for
     damages to property or for injury, illness or death of persons directly or indirectly

11        resulting therefrom.  FRANCHISEE agrees to defend, indemnify and save BKC
     and its subsidiaries, its affiliated and parent companies harmless of, from and with

12        respect to any such claims, demands, losses, obligations, costs, expenses,
     liabilities, debts or damages, (including but not limited to reasonable attorney's

13        fees) **unless resulting from the negligence of BKC**.  BKC's right to indemnity
     under this Agreement shall arise and be valid notwithstanding that joint or

14        concurrent liability may be imposed on BKC by statute, ordinance, regulation or

15        other law.

16   (Emphasis added.)

17        82.    Based on this provision, Franchisees are not required to indemnify BKC in

18   the event of BKC's negligence, which was the essence of the claims in the Castaneda

19   Suit.

20        83.    To the extent that any Franchise Agreements contain contrary language

21   with respect to indemnification for BKC's negligence, public policy precludes applying

22   such language to the detriment of similarly situated California Franchisees.

23        84.    As evidenced in the pleadings, representations by class counsel in the

24   Castaneda Suit, arguments, and settlement of the Castaneda Suit, the class claims

25   focused on BKC's alleged negligence and/or unlawful conduct in failing to ensure

26   compliance with the disability laws at the BKL restaurants through its control of the BKL

27   restaurants and its franchisees.  The Castaneda plaintiffs alleged that BKC's centralized

28

- 16 -

1  control and policies covered the initial construction, alterations, remodel, and operations

2  of the BKLs.  In addition, BKC took steps to monitor compliance with and enforcement of

3  these central policies, including conducting surveys.  The Castaneda Suit did not seek to

4  impose liability against the BKLs, but against BKC for its allegedly discriminatory

5  company-wide policies.

6       85.     Accordingly, Plaintiffs seek a judicial declaration that they are not

7  responsible for any losses or expenses incurred by BKC in connection with the

8  Castaneda Suit because all such losses and expenses all resulted from BKC's

9  negligence, thus defeating indemnity under the Franchise Agreements.

10  **FIRST CAUSE OF ACTION**

11  **Declaratory Relief Pursuant to 28 U.S.C. §§ 2201 and 2202**

12       86.     Plaintiffs reallege and incorporate by reference the allegations contained in

13  paragraphs 1 through 85.

14       87.     An actual controversy has arisen and now exists between Plaintiffs and

15  BKC concerning their respective rights and obligations under the Franchise Agreements,

16  in light of BKC's demand for reimbursement from Plaintiffs.

17       88.     In particular, there is a dispute as to whether BKC is entitled to

18  indemnification for attorney's fees and costs incurred in connection with the Castaneda

19  Suit and settlement.  BKC claims that the parties' agreements require Plaintiffs to defend

20  and indemnify BKC for certain costs.  Plaintiffs deny and dispute any responsibility,

21  based on the plain terms of the Franchise Agreements and that it was BKC's negligent

22  and/or unlawful conduct that led to the Castaneda Suit, and its ultimate settlement.

23       89.     Accordingly, Plaintiffs request that this Court determine the rights and

24  obligations of the parties and declare as follows: (1) BKC's negligence and otherwise

25  unlawful conduct was the class plaintiffs' basis for the Castaneda Suit; (2) BKC is not

26  entitled to indemnification from Plaintiffs in the event BKC was negligent or otherwise

27  acted unlawfully; and (3) BKC is not entitled to indemnification from Plaintiffs for any

28  attorney's fees or costs incurred in connection with the Castaneda Suit or settlement.

- 17 -

1    **Request for Attorney's Fees**

2        90.    Plaintiffs reallege and incorporate by reference the allegations contained in

3    paragraphs 1 through 89.

4        91.    Paragraph 21.I. of the Franchise Agreements provides: "In any litigation to

5    enforce the terms of this Agreement, all costs and all attorney's fees (including those

6    incurred on appeal) incurred as a result of the legal action shall be paid to the prevailing

7    party by the other party."

8        92.    As a result of BKC's repeated, improper demands for indemnification,

9    Plaintiffs have been forced to incur attorney's fees and costs enforcing their rights under

10   the Franchise Agreements.

11       93.    Accordingly, Plaintiffs request that an award be entered against BKC for all

12   attorney's fees and costs incurred by Plaintiffs in connection with this action for

13   declaratory relief.

14   //

15   //

16   //

17   //

18   //

19   //

20   //

21   //

22   //

23   //

24   //

25   //

26   //

27   //

28   //

FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF;
CASE NO. CV 10-0455 WHA

2844710.1

1

## **PRAYER FOR RELIEF**

2    **WHEREFORE**, Plaintiffs respectfully request that the Court enter judgment

3  against Burger King Corporation as follows:

4    1.    For a declaration that: (1) BKC's negligence and otherwise unlawful

5  conduct was the class plaintiffs' basis for the Castaneda Suit; (2) BKC is not entitled to

6  indemnification from Plaintiffs in the event BKC was negligent or otherwise acted

7  unlawfully; (3) BKC is not entitled to indemnification from Plaintiffs for any attorney's fees

8  or costs incurred in connection with the Castaneda Suit or settlement.

9    2.    Injunctive relief prohibiting BKC from unlawfully retaliating against Plaintiffs.

10    3.    For attorney's fees and costs incurred in connection with this dispute; and

11    For such other and further relief as this Court deems just and proper.

12

13  DATED:  January 31, 2011                 HANSON BRIDGETT LLP

14

15                            By: /s/ Megan Oliver Thompson
                                 MEGAN OLIVER THOMPSON
                                 Attorneys for Plaintiffs

16

17

18

19

20

21

22

23

24

25

26

27

28

- 19 -