1

2

3

4

5

6              IN THE UNITED STATES DISTRICT COURT

7

8           FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10   ROY D. NEWPORT, *et. al.*,

11           Plaintiffs,                        No. C 10-04511 WHA

12   v.

13   BURGER KING CORPORATION,                   **ORDER GRANTING IN PART AND**
                                                **DENYING IN PART BURGER**
14           Defendant.                         **KING CORPORATION'S**
                                                **MOTION TO DISMISS WILLIE C.**
15   _____/         **COOK'S CROSS-CLAIM AND**
                                                **VACATING HEARING**
16   AND RELATED COUNTERCLAIMS.

17   _____/

18                          **INTRODUCTION**

19           In this contract dispute, defendant Burger King Corporation moves to dismiss the action

20   pursuant to FRCP 12(b)(6).  For the reasons stated below, the motion is **GRANTED IN PART AND**

21   **DENIED IN PART**.

22                           **STATEMENT**

23           This action arises in the wake of the related class action settlement in *Castaneda v. Burger*

24   *King Corp.*, No. C 08-04262 WHA, 2010 WL 2735091 (July 12, 2010).  In *Castaneda*, a class of

25   plaintiffs alleged that architectural barriers to access to certain California Burger King restaurants

26   violated the Americans with Disabilities Act.  Ten classes were certified — one for each of the

27   ten individual restaurants where plaintiffs encountered alleged access barriers.  These ten

28   restaurants became known as the "Focus Ten."  Those parties entered a settlement agreement,

United States District Court

For the Northern District of California

and BKC agreed to pay a total of $7.5 million.  BKC then looked to the owners and operators of California Burger King franchises for indemnification (Compl. ¶ 4).  A group of franchisees then brought this suit against BKC requesting declaratory relief over the indemnity issue (*id.* at ¶ 90).  BKC counterclaimed, seeking indemnification from California Burger King franchisees (Dkt. No. 90).  Willie C. Cook was a newly added party named as a counterclaim defendant.

The instant motion, however, concerns Cook's cross-claims back against BKC.  Cook was a franchisee of Burger King 2055 in El Cerrito and Burger King 2288 in Oakland.  BK #2055 and BK #2288 were two of the "Focus Ten" restaurants subject to the class certification order in *Castaneda*.  Cook was also franchisee of BK #3674, also located in Oakland.  After signing franchise agreements for all three locations, Cook assigned the franchise agreements and leases to Huntington Restaurants, Inc., a corporation of which Cook was the sole shareholder (Amd. Cross-claim ¶¶ 6–7, 9).

Between 2006 and 2008, Cook personally invested $600,000 to make certain "re-imaging" improvements to BK #2288 as required by the Burger King franchise agreement.  Following the *Castaneda* lawsuit, BKC sent consultants to survey BK #2288 and BK #2055.  Cook was instructed to implement changes to the locations in order to comply with ADA requirements.  These improvements cost another $110,000 (*id.* at ¶¶ 23–29).  The costs of the ADA repairs so close on the heels of substantial "re-imaging" improvements — complicated by the worldwide financial crisis of the fall of 2008 — left Cook in financial strain (*id.* at ¶¶ 31–32).

In March 2009, Cook decided to sell BK #3674, one of the two Oakland stores, which had been underperforming.  In the preceding months, Cook had been required to install a new dining room at this location.  He did so, but reduced the dining room size by 20-30 seats to better facilitate management of the restaurant despite the fact that BKC had denied him permission to make such reductions.  Cook discussed his financial difficulties with BKC, but was denied permission to close the restaurant.  In March 2009, Cook received a letter from BKC terminating his franchise for BK #3674 because Cook had not arranged the dining room as per BKC's specification.  Cook put the franchise on the market and sold it to John Mascali, a Caucasian.

1    He was permitted by BKC to continue operating the restaurant with the reduced-sized dining

2    room (*id.* at ¶¶ 34–36, 39).

3        The financial strain began to affect Cook's health.  In July 2009, he underwent triple

4    bypass heart surgery.  Cook began to fall behind on his financial obligations to BKC, and owed

5    $50,000 in past franchise fees by the end of 2009.  BKC refused to negotiate regarding the

6    amount due (*id.* at ¶¶ 40, 42).

7        In December 2009, Cook was deposed in connection with the *Castaneda* litigation.

8    Only four days after his deposition testimony, Cook received a letter of notice of default, and

9    three days after that a termination notice.  Later that month, HRI filed Chapter 11 bankruptcy

10   (*id.* at ¶¶ 43–44, 45).  In July 2010, the *Castaneda* settlement allocated $1.8 million to BK #2055

11   and BK #2288.  That month, on the same day Cook's wife of over 30 years died, BKC presented

12   him with a bill for $1.8 million.  Cook ultimately either sold or transferred his remaining

13   franchises (*id.* at ¶¶ 48–48, 52).

14       After the sale of all of his franchises, Cook "learned of other discriminatory treatment."

15   BKC allegedly required Cook "to pay a substantial mark-up over that which BKC paid to the

16   owner of the leased property.  Cook also learned that BKC has had a historical practice of

17   charging African-American franchisees a substantially higher mark-up on its leases than it

18   charges other non-black franchisees" (*id.* at ¶ 53).

19       After Cook was named as a party in BKC's counterclaim, Cook brought a cross-claim

20   against BKC (Dkt. No. 151).  Cook alleges seven claims for relief:  (1) breach of the franchise

21   agreements; (2) declaratory relief under 28 U.S.C. 2201; (3) breach of the duty of good faith and

22   fair dealing with respect to BK #2055 and BK #2288; (4) breach of the duty of good faith and fair

23   dealing with respect to BK #3674; (5) intentional infliction of emotional distress; (6) negligence;

24   and (7) discrimination.  This order follows full briefing.

25                                    **ANALYSIS**

26       To survive a motion to dismiss, a complaint must contain sufficient factual matter,

27   accepted as true, to state a claim for relief that is plausible on its face.  FRCP 12(b)(6); *Ashcroft v.*

28   *Iqbal*, 129 S. Ct. 1937, 1949 (2009).  A claim is facially plausible when there are sufficient

**United States District Court**
For the Northern District of California

3

factual allegations to draw a reasonable inference that the defendants are liable for the misconduct alleged.  While a court "must take all of the factual allegations in the complaint as true," it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1949–50 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) (citation omitted).

**1.     STANDING.**

BKC moves to dismiss the claims alleging breach of contract and seeking declaratory relief because Cook lacks standing to bring the claims.  BKC argues that because Cook assigned the franchise agreements for BK #2055 and BK #2288 to HRI, only HRI — not Cook, its sole shareholder — has standing to sue (Br. 5–6).

The "irreducible constitutional minimum of standing" contains three elements: (1) plaintiff must have suffered an injury in fact that is concrete and particularized, (2) there must be a causal connection between the injury and defendant's conduct, and (3) it must be likely, as opposed to speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

It is a well-established principle of corporate law that a shareholder cannot bring an individual direct claim for relief for an injury done to the corporation by a third party. *United States v. Stonehill*, 83 F.3d 1156, 1160 (9th Cir. 1996).  A shareholder does have standing, however, when he has been "injured directly and independently of the corporation." *RK Ventures v. City of Seattle*, 307 F.3d 1045, 1057 (9th Cir. 2002).

**A.     Breach of the Franchise Agreement.**

Cook's first claim is for breach of the franchise agreements.  In order for Cook to have standing to bring this claim, he must demonstrate that he was injured independently of HRI as a result of the alleged breach of the franchise agreements.

Cook alleges that BKC's failure to disclose "vital developments in disability access laws" violated the franchise agreement and prevented him from "successfully manag[ing] each of the subject franchises" (Amd. Cross-claim ¶ 61).  Cook has indeed been injured independently of his

4

1    corporation by the alleged breaches of the franchise agreements.  Following the $7.5 million

2    *Castaneda* award, BKC brought a suit for indemnification, and named Willie C. Cook *personally*

3    as a counter-defendant, not his corporation HRI (Dkt. No. 90).  As a result of the alleged breach,

4    Cook has "been forced to incur attorney's fees to defend BKC's indemnity and guaranty

5    demands" (Amd. Cross-claim ¶ 66).

6           Cook has thus been injured directly and independently of HRI.  There is a demonstrated

7    causal connection between Cook's injury and BKC's alleged breach of the franchise agreements,

8    and it is likely that the injury would be redressed by a favorable judgment.  Cook has thus

9    satisfied all three elements necessary to establish standing.

10          The only binding precedent cited by BKC is *Sherman v. British Leyland Motors, Ltd.*,

11    601 F.2d 429, 440–41 (9th Cir. 1979).  *Sherman*, however, did not involve a factual situation

12    similar to the one involved here.  In *Sherman*, the plaintiff never deviated from its corporate

13    identity, nor suffered any injury distinguishable from injury to the corporation. *Id.* at 439.

14    The situation here is distinguishable.  Cook was named as an individual in BKC's own suit for

15    indemnification.  Cook thus has standing to assert a claim for breach of the franchise agreement.

16    Accordingly, BKC's motion to dismiss the claim for breach of contract is **DENIED**.

17                  **B.**    **Declaratory Relief.**

18          Cook's second claim is for declaratory relief under 28 U.S.C. 2201.  Section 2201(a)

19    allows a court in a "case of real controversy" to "declare the rights and other legal relations of any

20    interested party seeking such declaration, whether or not further relief is or could be sought."

21    Cook seeks a determination of the rights and obligations of the parties and requests the following

22    declarations:  (1) BKC's negligence was the basis for the *Castaneda* lawsuit; (2) BKC is not

23    entitled to indemnification from Cook if BKC was negligent or acted unlawfully, and (3) BKC is

24    not entitled to indemnification from Cook for attorneys fees or costs incurred in connection with

25    the *Castaneda* lawsuit.

26          BKC argues that Cook has no standing to request declaratory relief, reiterating its earlier

27    argument that Cook has no standing as an individual.  Section 2201, however, allows "*any*

28    interested party" to seek declaratory relief.  BKC itself named Cook *individually* as a party when

*United States District Court*
For the Northern District of California

5

1    seeking indemnification, and now intends to hold him liable for $1.8 million of the *Castaneda*

2    award.  Cook is undeniably an "interested party."  BKC's motion to dismiss Cook's claim for

3    declaratory relief is **DENIED**.

4              **2.    BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING.**

5              Cook alleges breach of the implied duty of good faith and fair dealing of all three

6    franchise agreements.  It is long recognized in California law that every contract contains an

7    implied covenant of good faith and fair dealing that "neither party will do anything which will

8    injure the right of the other to receive the benefits of the agreement."  *Wolf v. Walt Disney*

9    *Pictures & Television*, 162 Cal. App. 4th 1107, 1120 (2008).  The covenant, however, "is read

10   into contracts in order to protect the express covenants or promises of the contract, not to protect

11   some general public policy interest not directly tied to the contract's purpose."  *Foley v.*

12   *Interactive Data Corp.*, 47 Cal. 3d 654, 690 (Cal. 1988).  There is thus no obligation to deal fairly

13   or in good faith absent an existing contract.  *Racine & Laramie, Ltd. v. Dep't of Parks &*

14   *Recreation*, 11 Cal  App. 4th 1026, 1032 (1992).

15             **A.    BK #2055 and BK #2288.**

16             Cook's third claim is for breach of the duty of good faith and fair dealing pursuant to the

17   franchise agreements for BK #2055 and BK #2288.  He alleges that during negotiations, BKC

18   "failed to disclose material facts" with the "intent to induce Cook to enter into the guaranty

19   agreements containing guarantee provisions requiring him to indemnify BKC."  He alleges that if

20   he had been aware of certain ADA obligations, "he would not have agreed to guarantee HRI's

21   agreement to indemnify BKC in disability access claims" (Amd. Cross-claim ¶ 66).  The failure

22   to disclose these facts, however, took place during the negotiation process, *not* while there was an

23   existing contract between Cook and BKC.  There is no pre-contract covenant of good faith and

24   fair dealing in the negotiation process.  *Copeland v. Baskin Robbins U.S.A.*, 96 Cal. App. 4th

25   1251, 1259 (2002).  In his opposition, Cook offers nothing in rebuttal of this argument.  He has

26   thus failed to state a claim on which relief can be granted pursuant to FRCP 12(b)(6).

27   Accordingly, BKC's motion to dismiss this claim is **GRANTED**.

28

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

1

2    **B.    BK #3674.**

3          Cook's fourth claim is for breach of the duty of good faith and fair dealing of the franchise

4    agreement for BK #3674.  Cook alleges that BKC breached this duty "by unreasonably refusing

5    Cook's request to reduce the dining room only to later permit the subsequent franchisee to

6    continue to operate the franchise with the reduced dining room" (Amd. Cross-claim ¶ 70).

7    In December 2009, however, Cook transferred his interest in BK #3674 (Cook Exh. D).

8    The transfer agreement specified that each of the "Owners, Guarantors, Assignors, and

9    Assignees . . . unconditionally and absolutely releases and forever discharges BKC . . . against

10   any and all claims . . . aris[ing] out of this Agreement, the Franchise Agreement, the operation

11   of the Restaurant, or any other matter" (*id.* at 2).  Cook is identified as the assignor of the transfer

12   agreement (*id.* at 9).  Cook thus released BKC from any claims arising out of the franchise

13   agreement of BK #3674, and cannot state claim for breach of implied duty of good faith and

14   fair dealing under this franchise agreement.  Accordingly, BKC's motion to dismiss this claim

15   is **GRANTED**.

16       **3.    INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.**

17         Cook's fifth claim is for intentional infliction of emotional distress.  The elements of

18   the tort of intentional infliction of emotional distress are:  (1) extreme and outrageous conduct

19   by defendant with the intention of causing, or reckless disregard of the probability of causing,

20   emotional distress; (2) plaintiff suffered severe or extreme emotional distress; and (3) actual and

21   proximate causation of the emotional distress by defendant's outrageous conduct.  *Christensen v.*

22   *Superior Court*, 54 Cal. 3d 868, 903 (Cal. 1991).

23         Cook alleges that BKC's extreme and outrageous behavior included pressuring him to

24   make unnecessary improvements while he was undergoing heart surgery, retaliating against him

25   for his deposition testimony in the *Castaneda* lawsuit by terminating his franchise agreements,

26   refusing to negotiate with him, and demanding $1.8 million on the same day that his wife of

27   30 years died.  He also alleges that BKC's behavior caused him "to suffer financial loss,

28   humiliation, mental anguish, and emotional and physical distress" (Amd. Cross-claim ¶¶ 80–81).

7

United States District Court

For the Northern District of California

1    Cook has pled sufficient facts, if accepted as true, to state a claim for relief that is plausible on its

2    face.  Accordingly, BKC's motion to dismiss Cook's fifth claim is **DENIED**.

3         **4.    NEGLIGENCE.**

4         Cook's sixth claim is for negligence.  The elements of negligence are duty, breach of duty,

5    causation, and damages.  The general rule in California is that each person has a duty to use

6    "ordinary care" and is liable for injuries caused by a failure to exercise this care.  *Parsons v.*

7    *Crown Disposal Co.*, 15 Cal. 4th 456, 472 (Cal. 1997).

8         Cook asserts that BKC owed him a duty of care, and "knew or should have known that

9    failure to exercise due care in its relationship with Cook would cause Cook severe emotional

10   distress" (Amd. Cross-claim ¶ 74–75).  In support of this claim, Cook alleges the same

11   misconduct he offered in support of his intentional infliction of emotional distress claim,

12   including unnecessary pressure to renovate while he was having health problems and BKC's

13   demand of $1.8 million on the same day his wife died.

14        BKC argues that the only injury Cook alleges is due to breach of contract, and thus

15   contract law should govern this claim, not tort law (Br. 11).  Cook alleges BKC's actions outside

16   of termination of the franchise agreement were negligent.  He also alleges that BKC breached its

17   duty of ordinary care and caused Cook emotional injury while he was ill and grieving after the

18   death of his wife. Cook has thus plead sufficient facts to state a claim for negligence.

19        BKC also argues that both tort claims are barred by the economic loss rule.  The economic

20   loss rule precludes recovery under tort theories for losses that are solely economic in nature.

21   *Stop Loss Ins. Brokers, Inc. v. Brown & Toland Med. Grp.*, 143 Cal. 4th 1036, 1057 (Cal. 2006).

22   Cook, however, claims more than purely economic damages.  He seeks recovery for

23   embarrassment, mental anguish, and emotional and physical distress.  The economic loss

24   rule is thus inapplicable.  Accordingly, BKC's motion to dismiss Cook's claim for negligence

25   is **DENIED**.

26        **5.    DISCRIMINATION.**

27        Cook's seventh claim is for discrimination in violation of 42 U.S.C. 1981 and California

28   Civil Code Section 84.  Section 1981 gives all persons within the United States the same right to

make and enforce contracts "as is enjoyed by white citizens."  Section 84 prohibits cancelling or terminating a dealership agreement on the basis of race.

BKC argues that because it was released from liability for claims relating to BK #3674, the claim for discrimination must fail.  This order agrees.  When signing the transfer agreement, Cook released BKC from any claims arising out of "this Agreement, the Franchise Agreement, the operation of the restaurant, or *any other matter*" (Cook Exh. D at 2) (emphasis added).  Cook thus released BKC from liability for any sort of claim arising from BK #3674.  BKC's motion to dismiss the discrimination claim is **GRANTED**.

## CONCLUSION

For the foregoing reasons, BKC's motion to dismiss is **GRANTED IN PART AND DENIED IN PART**.  More specifically, BKC's motion to dismiss Cook's third, fourth, and seventh claims is **GRANTED**.  These claims are dismissed without leave to amend as they cannot be cured by further factual pleading.  BKC's motion to dismiss Cook's first, second, fifth, and sixth claims is **DENIED**.  The hearing set for October 13 is **VACATED**.  BKC shall answer within **FOURTEEN CALENDAR DAYS**.

**IT IS SO ORDERED.**

Dated:  October 5, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

*United States District Court*
For the Northern District of California

9