IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ROY D. NEWPORT, *et al.*,

    Plaintiffs/Counter-Defendants,

No. C 10-04511 WHA

v.

BURGER KING CORPORATION,

    Defendant/Counter-Claimant.

                                     /

**ORDER RE SUMMARY JUDGMENT MOTIONS**

Except as stated at the end of this order, all pending summary judgment motions are **DENIED**.

The lessee/franchisees are entitled to their day in court as to whether (or the extent to which) there were in fact any disability barriers at their locations. On the present record, there are triable fact issues on this question and as to whether they should be deemed bound by the *Castenada* settlement, even presumptively, there having been no third-party joinder of the lessee/franchisees in the underlying suit and there now being inadequate proof of any proper, timely and unequivocal tender of defense. Mere notice to an indemnitor is not enough. BKC's representation (Br. 10) that the defense was tendered was inaccurate, at least on this record, and it is disappointing that BKC counsel would have misstated so important a point.

Contrary to BKC, the letter dated January 22, 2009, did not tender the defense of the action; rather, it gave further notice of the action and stated that the letter recipient was obligated to defend and indemnify BKC under its agreements with BKC. This was not a tender but merely

1  a claim of a purported duty owed by the recipient to defend and to indemnify. That it was not
2  a tender was made clear in the passage stating that "as we discussed," a single unified defense
3  (controlled by BKC) was the most effective and cost efficient and that "BKC will assume the
4  defense of this action." At most, the letter would support an argument that the recipient, having
5  remained silent in the face of the letter, is now estopped to deny that it owed and owes to BKC
6  whatever duty to indemnify was called out in the agreements and is further estopped to deny that
7  the recipient had acquiesced in the unified defense alluded to in the letter. Estoppels are usually
8  fact-bound issues and cannot be resolved on summary judgment. More than that, the letter begs
9  the question of the contours of the duty to indemnify and any and all issues of allocation.

10  For the same reason, there is a triable issue whether the lessee/franchisees are even
11  presumptively bound by the dollar amounts sought. There is also an issue whether the
12  lessee/franchisees ever agreed to the BKC allocation formula. There are other triable issues
13  as well.

14  This, of course, is *not* to say that there is no indemnification duty owed by the
15  franchisees. To the contrary, it seems likely that at least some indemnification will lie, to be
16  determined store by store. Rather, it is to say that each franchisee is entitled to litigate the scope
17  of the duty.

18  Which agreement governs? The lease or the franchise agreement? Both possibly.
19  Both have indemnification duties that would seem to apply save and except for those that have
20  the gross negligence carve-out. At all events, which agreement applies cannot be adjudicated as
21  a matter of law on this record. This issue too will have to be tried.

22  The lessee/franchisees will *not* be able to escape all liability by claiming the *Castenada*
23  action and settlement were aimed solely at BKC's corporate policies. But for actual disability
24  violations at a given store, there could have been no liability by BKC for that store. In turn, each
25  store owed a duty to remedy all disability violations, or so a jury could reasonably find. At least
26  some indemnification will be due and owing for the substantive settlement once BKC proves
27  (as it seems likely but not certain it can) that the ten stores were in violation of the disability laws
28

1 and that the store owed a duty to indemnify, subject only to the possible exception in some of
2 the agreements for BKC gross negligence.

3 As to the latter, it seems unlikely that the lessee/franchisees will be able to excuse their
4 own violations of law and contract by saying that BKC was "grossly negligent" in failing to
5 make the lessee/franchisees do what the law and contract already required of them. That said,
6 this possibility cannot be ruled out on their summary judgment record. Nor can this order rule
7 out some wrinkle like estoppel or unclean hands, unlikely as they seem now. All points herein
8 must be tested at trial.

9 In sum, these are the main issues (not all) that need to be tried:

10 1. *Duty:* At trial, BKC will have to establish its right to recover
11 under the agreements and this will be a store-by-store inquiry. It seems very
12 likely that BKC will succeed on this point save only for those stores that had the
13 gross negligence carve-out (and it seems unlikely that BKC was grossly
14 negligent), but none of this can be finally resolved on this summary judgment
15 record.

16 2. *Cost of Defense:* Since there was no proper tender of defense or
17 joinder, the franchisees may contest the reasonableness of the expensiveness of
18 the unified defense. Similarly, they may contest the allocation formula.
19 Questions of fact exist as to whether they ever agreed to the formula. Note that
20 even if a store was in full access compliance, it would very likely still owe a duty
21 to reimburse for reasonable costs of defenses.

22 3. *Substantive Settlement:* As to those ten franchisees from whom
23 BKC seeks to recover the substantive settlement, each such franchisee has the
24 right to its day in court on whether it was in violation in the first place and, to
25 the extent it was in violation, whether the settlement was unreasonably high in
26 relation to the actual violations that had occurred at the store. Although this
27 cannot be resolved on summary judgment, the franchisees should be realistic and
28 take into account the surveys that show the actual then-prevailing conditions.

3

Also, the fact that the settlement was a high dollar amount is not necessarily fatal since in the long run the settlement may have saved the defense more money in litigation costs. These are all fact questions.

*          *          *

Burger King Corporation argues that it is entitled to summary judgment on all of Willie Cook's cross-claims because he signed a release barring his claims. Cook signed an agreement transferring franchise No. 3674 to BKC in December 2009. That agreement contained a release clause, but it pertained to franchise No. 3674 *only*. Cook owned two other franchise agreements — No. 2055 and No. 2288 — and events involving those franchises in part make up the foundation for Cook's claims. Accordingly, BKC's motion for summary judgment as to Cook's declaratory relief, negligence, and intentional infliction of emotional distress claims is **DENIED**. BKC's motion for summary judgement as to Cook's breach of contract claim as to franchises No. 2055 and No. 2288 is **DENIED**. Cook's breach of contract claim as to franchise No. 3674, however, is barred by the release he signed. As such, BKC's motion for summary judgment on Cook's breach-of-contract claim as to franchise No. 3674 is **GRANTED**.

**IT IS SO ORDERED.**

Dated: December 5, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

4